## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON

**ANDREW MILLER,**

       **Plaintiff,**

**v.**                            **Case No. 2:15-cv-01581**

**MARGARET CLIFFORD, Lt., and**
**JOHN DOE, Officer,**

       **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is the defendants' unopposed Motion for Summary Judgment (ECF No. 16). This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PLAINTIFF'S ALLEGATIONS AND RELEVANT PROCEDURAL HISTORY

The plaintiff's verified Complaint alleges that, on June 4, 2013, the plaintiff was housed in cell 712 on pod 7 of the Quilliams II segregation unit at the Mount Olive Correctional Complex ("MOCC"). Although cell searches were being conducted on the segregation units, the plaintiff alleges that the team was not searching near his cell at that time. (ECF No. 2, ¶ 9-11). The plaintiff alleges that Lt. Margaret Clifford walked by, saw him looking out his outside window at the back of his cell, and ordered him to sit on his bunk. (*Id.*, ¶¶ 12-13). The plaintiff states that he told Lt. Clifford that he was looking out the window and that he was not bothering her. (*Id.*, ¶ 14). Lt. Clifford again demanded

that he sit on his bunk, and the plaintiff persisted in asking why he had to do so. (*Id.*, ¶¶ 15-17). Lt. Clifford allegedly stated, "Because I said so." (*Id.*, ¶ 18). When the plaintiff again refused to comply, Lt. Clifford ordered an unidentified officer (John Doe)[1] to "Deploy!" and John Doe deployed pepper spray into the plaintiff's cell, allegedly spraying him in the face and head. (*Id.*, ¶¶ 19-20). The plaintiff further alleges that his eyes burned, he couldn't breathe, and he threw up. (*Id.*, ¶ 21). The plaintiff was removed from his cell and decontaminated. (*Id.*, ¶ 22).

The plaintiff contends that defendants Clifford and Doe "used un-called for force" by pepper spraying him when he was not violating a prison rule. (*Id.*, ¶ 32). The plaintiff seeks declaratory and injunctive relief, and monetary damages against Clifford and Doe in their individual capacities.

On September 21, 2016, after a period for discovery, the defendants filed the instant Motion for Summary Judgment (ECF No. 16) and a Memorandum of Law in support thereof (ECF No. 17). Despite being advised, pursuant to the holding in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), of his right and obligation to respond to the motion for summary judgment, the plaintiff has not filed any response. Nor did the defendants file a reply brief. This matter is ripe for adjudication.

---

[1] Despite time for discovery, the plaintiff has never identified the John Doe officer who deployed the OC spray. Thus, he has not been served with process. Nonetheless, the defendants' Motion for Summary Judgment is filed on behalf of both defendants Clifford and Doe. Accompanying the Motion for Summary Judgment is an Affidavit of Capt. Margaret Clifford, which identifies the officer who deployed OC spray into the plaintiff's cell on June 4, 2013 as "Sgt. Jared Wilson." (ECF. No. 16, Ex. B at 2, ¶ 8). The defendants have also attached incident reports concerning this incident, including an incident report completed by "Sergeant Jarrod Wilson" which confirms that, after the plaintiff refused to comply with both his and Clifford's commands to sit on his bunk, he deployed two one-second bursts of OC spray into the plaintiff's cell. (ECF No. 16, Ex. C at 7).

## STANDARD OF REVIEW

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil

Procedure provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010). Material facts are those necessary to establish the elements

of a party's cause of action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable

inferences drawn therefrom in a light most favorable to the non-moving party, a

reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party

has the burden of establishing that there is an absence of evidence to support the

nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Even if there

is no dispute as to the evidentiary facts, summary judgment is also not appropriate where

the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Kentucky Cent.*

*Life Ins.* Co., 950 F.2d 931, 937 (4th Cir. 1991).

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that:

A party asserting that a fact cannot be or is genuinely disputed, must support the assertion

by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

3

Fed. R. Civ. P. 56(c)(1). Subsection (e) of Rule 56 provides that, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may: (1) give the parties an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and undisputed supporting materials show that the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

A court must neither resolve disputed facts nor weigh the evidence, *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Sprenkle v. Hartford Life Ins. Co.*, 84 F. Supp. 2d 751 (N.D. W. Va. 2000).

If a party's motion relies upon materials outside of the four corners of the Complaint to support its claim or defenses, the court may treat a motion to dismiss as one for summary judgment pursuant to Rule 56. *See Jeffers v. Wal-Mart Stores, Inc.*, 84 F. Supp.2d 775, 777 (S.D. W. Va. 2000).

## ANALYSIS

The only remaining issue in this case is whether the defendants' conduct violated the plaintiff's right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment of the United States Constitution.  In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  This is a low standard.  The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.* at 833.

"An inmate's Eighth Amendment claim involves a subjective component and an objective component." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008); *see also Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) ("Determination of whether the Eighth Amendment has been violated requires analysis of subjective and objective components.") (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991))).  "Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams*, 77 F.3d at 761.

In *Hudson v. McMillan*, 503 U.S. 1 (1992), the Supreme Court held that use of excessive physical force against an inmate may constitute cruel and unusual punishment even when the inmate does not suffer serious injury.  "The objective component focuses not on the severity of any injuries inflicted, but rather on 'the nature of the force' which must be 'nontrivial.'" *Tedder v. Johnson*, 527 F. App'x 269, 272 (4th Cir. 2013) (quoting

*Wilkins v. Gaddy*, 559 U.S. 34 (2010)).  Nevertheless, the defendants emphasize that the plaintiff did not suffer any serious injury from the deployment of OC spray.

Under the subjective component, "the state of mind required in excessive force claims is 'wantonness in the infliction of pain.'"  *Iko*, 535 F.3d at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)).  When prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Whitley*, 475 U.S. at 320-21; *Wilkins*, 559 U.S. at 37.

The defendants' Motion and Memorandum of Law assert that pepper spray was used against the plaintiff on June 4, 2013 in a good faith effort to restore order in the prison unit.  Accordingly, the defendants assert that the plaintiff cannot successfully establish that defendants Clifford and Doe violated his Eighth Amendment rights.  The defendants' Memorandum of Law states:

> The infliction of pain in the course of a prison security measure does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable and hence unnecessary in the strict sense. [*Whitley*, 475 U.S. at 319].  "Prison officials do not violate the U.S. Const. Amend VIII whenever it appears in retrospect that the infliction of pain during a security measure could theoretically have been avoided."  *Id.* at 319.  The U.S. Supreme Court has found that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

(ECF No. 17 at 9).  The defendants' Memorandum of Law identifies and discusses five factors set forth by the Supreme Court in *Whitley* that must be weighed in determining whether force was applied in a good faith effort to maintain or restore order, or whether it was done so maliciously and sadistically for the very purpose of causing harm.  (*Id.*)

6

The factors used in making this determination are:  (1) the need for application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury; (4) the threat reasonably perceived by the responsible official; and (5) any efforts made to temper the severity of a forceful response.  *Whitley*, 475 U.S. at 321; *Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996).  (*Id.*)  The *Whitley* Court noted that:

> [I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison staff, in addition to the possible harms to inmates against whom force might be used.

475 U.S. at 320.  The Supreme Court has further emphasized that, "prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Id.* at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. at 547).  Thus, the Court stated that "[u]nless it appears that the evidence viewed in the light most favorable to the plaintiff will support a reliable inference of wantonness in the infliction of pain, under the standard we have described, the case should not go to the jury."  *Id.* at 322.  The undersigned will address the use of force as alleged by the plaintiff under the *Whitley* factors.

The defendants assert that a proper weighing of the *Whitley* factors supports a finding that the deployment of pepper spray into the plaintiff's segregation cell was done in a good faith effort to maintain or restore discipline and order and not maliciously or sadistically for the very purpose of causing harm.  (*Id.* at 12-13). Specifically, the defendants rely upon the undisputed facts that there was a mass cell search occurring in and around the plaintiff's pod, and that the plaintiff refused Lt. Clifford's repeated orders

to sit on his bunk.  Accordingly, defendants Clifford and Doe assert that there is no genuine issue of material fact, and that they are entitled to judgment as a matter of law on the plaintiff's Eighth Amendment claims.

Starting with the first *Whitley* factor, the defendants contend, that there was an evident need for the deployment of OC spray by defendant Doe, as ordered by defendant Clifford, based upon the "highly volatile situation" and the plaintiff's non-compliant behavior.  (ECF No. 17 at 9-10).  Their Memorandum of Law asserts that MOCC received intelligence that inmates in the Quilliams II housing unit were stockpiling edged weapons and preparing for an assault on correctional officers and staff.  (ECF No. 16, Ex. B, *Affidavit of Margaret Clifford*; ECF No. 17 at 5).  Defendant Clifford put together a team to search every cell on the unit and the plaintiff's pod was the first to be searched.  (*Id.*)

Upon entering the pod, Clifford and other officers ordered all inmates to remain silent and sit on their bunks.  (*Id.*)  As noted in both Clifford's affidavit (ECF No. 16, Ex. B) and the incident reports (*id.*, Ex. C), Clifford and Sgt. Jarrod Wilson (who, as noted previously herein, appears to be the John Doe Officer named in the Complaint), specifically ordered the plaintiff to sit on his bunk, but the plaintiff refused.  Additionally, in his deposition in this matter, the plaintiff admitted that he repeatedly failed to comply with the officers' orders.  (ECF No. 16, Ex. A at 36-40).  Thus, that fact is undisputed.

The defendants' Memorandum of Law, as supported by Clifford's affidavit and the incident reports, further asserts that the plaintiff laid down on his stomach in the middle of his cell and complained that he was suffering from asthma and could not breathe.  (ECF No. 16, Exs. B and C; ECF No. 17 at 5-6).  The defendants' evidence further suggests that the plaintiff's hands were positioned underneath his lower torso, and that, at first, he refused to comply with the officers' orders to perform a strip search, as required before

8

they could enter his cell.  (*Id.*)  Ultimately, he complied with the strip out process and was

taken to be decontaminated.  (*Id.*)  While the plaintiff was out of his cell, Clifford

discovered a homemade edged weapon in the pile of clothes that had been placed at the

plaintiff's feet during the strip search.  (*Id.*)  The plaintiff has not disputed any of these

facts.

The defendants further assert that the plaintiff was convicted of violent crimes and,

admittedly, has a long history of disciplinary issues and violent behavior while in the

custody of the West Virginia Division of Corrections, including several assaults.  (ECF No.

16, Ex. A at 20-21, 25-26, 27 and 29; ECF No. 17 at 6-7).  Thus, when looking at the second

*Whitley* factor concerning the relationship between the need and the amount of force

used, Clifford and Doe assert that they only used that force which was reasonably

necessary to obtain the plaintiff's compliance.  (*Id.* at 10-11).  They further contend that

the United States Court of Appeals for the Fourth Circuit has recognized that "the use of

mace on an unruly or 'recalcitrant' prison inmate, though confined in his cell, is not

plainly *per se* unconstitutional."  *Bailey v. Turner*, 736 F.2d 963, 970 (4th Cir. 1984); *see*

*also Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (acknowledging that chemical

agents used in limited or small quantities to control a recalcitrant inmate may be

constitutional and more humane than a face to face confrontation) (other citations

omitted).  (*Id.* at 11).  Their Memorandum of Law further states:

> In the instant matter, despite clear orders the Plaintiff refused to sit
> on his bunk while mass cell searches were conducted.  Notwithstanding
> Plaintiff's refusal to follow the initial order, Plaintiff's own version of the
> facts demonstrates that he was twice more ordered to sit on his bunk; he not
> only refused to sit on his bunk, but challenged the order through a verbal
> confrontation.

(*Id.*)  The defendants make a similar argument with respect to the fourth *Whitley* factor

– the threat reasonably perceived by the defendants – again asserting that the plaintiff

acknowledged that he repeatedly refused their orders.  (*Id.* at 12).  They further assert:

> In fact, not only did Mr. Miller refuse these orders but also he came into the situation with a long history of institutional rule violations, institutional violence and convictions for violent crimes which led him to Mount Olive Correctional Complex.  In determining this factor, the undisputed history of Plaintiff is relevant.  Plaintiff is serving a sentence related to multiple violent felonies, has been convicted of assaulting a multitude of inmates while incarcerated, and had a history of keeping deadly weapons in his cell.  Given the Plaintiff's history, these Defendants had good reason to abandon efforts to convince the Plaintiff to sit on his bunk, after being given three orders, and ultimately escalated to the use of OC spray to gain his compliance.

(*Id.*)

The defendants further assert that the plaintiff is unable to satisfy the third *Whitley*

factor because he cannot demonstrate that he suffered anything more than temporary

irritation and possible swelling from the pepper spray, and he did not require medical

treatment.  (*Id.*)  Finally, with respect to the fifth *Whitley* factor, the defendants contend

that the defendants tempered their response to the plaintiff's conduct because they could

have employed more invasive or painful measures, but chose to deploy the least amount

of force available via two one-second bursts of pepper spray.  (*Id.*)  Accordingly, the

defendants contend that these factors all weigh in favor of a finding that they acted in a

good faith effort to maintain or restore order and not maliciously and sadistically for the

very purpose of causing harm.  (*Id.* at 12-13).

Again, despite being advised of the requirements to respond to any motion for

summary judgment, the plaintiff has failed to respond to the defendants' motion in any

way and, thus, has not disputed the defendants' evidence and arguments.  Although the

court may consider the plaintiff's verified complaint as a sworn statement in opposition

to the defendants' summary judgment motion,[2] the Complaint admits the plaintiff's refusal to comply with the defendants' orders, and does not offer any other evidence to dispute the facts surrounding the defendants' use of OC spray on him on June 4, 2013, or any other material facts. Accordingly, the undersigned treats the defendants' motion as undisputed.

Applying the *Whitley* factors to the undisputed facts of this case, viewed in the light most favorable to the plaintiff, the undersigned proposes that the presiding District Judge **FIND** that the force used against the plaintiff by defendants Clifford and Doe on June 4, 2013, was used in a good faith effort to restore order, and not maliciously or sadistically for the purpose of causing harm. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law on the plaintiff's Eighth Amendment claims.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motion for Summary Judgment (ECF No. 16) and dismiss this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code,

---

[2] 28 U.S.C. § 1746 provides that unsworn declarations made under penalty of perjury are generally equivalent to statements made under oath and, thus, a complaint which is executed under penalty of perjury may be considered verified. *See Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992). The Fourth Circuit has held that "a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

11

Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the district court and a waiver of appellate review by the circuit court of appeals.  *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy to the plaintiff and to transmit a copy to counsel of record.

 June 29, 2017

_____
Dwane L. Tinsley
United States Magistrate Judge

12